UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEPHEN CATRON ET AL. | CIVIL ACTION |
| VERSUS | No. 14-37 |
| ANDREW ROGUL ET AL. | SECTION I |

### ORDER AND REASONS

Before the Court is a motion[1] filed by defendants to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Plaintiffs have filed an opposition.[2] For the following reasons the motion is **GRANTED**.

### BACKGROUND

The above-captioned matter arises out of a failed "investment scheme"[3] between plaintiffs, Stephen Catron ("Catron") and Pinnacle View Consulting LLC ("Pinnacle"), and defendants, Andrew Rogul, Kevin Ward, and K.M. Ward Inc. In August 2007, plaintiffs and defendants began discussing an alleged investment scheme in which they would be "leasing"[4] securities in connection with a series of "managed buy/sell"[5] transactions.[6] Plaintiffs and defendants ultimately entered into a joint venture agreement that required plaintiffs to provide $200,000 to fund the scheme.[7] Defendants allegedly stated that the $200,000 would never be at risk and would be returned immediately "out of the proceeds from the first 'buy/sell' transaction

---

[1] R. Doc. No. 4.
[2] R. Doc. No. 5.
[3] R. Doc. No. 1, ¶ 56.
[4] R. Doc. No. 1, ¶ 5.
[5] R. Doc. No. 1, ¶ 14.
[6] *See* R. Doc. No. 1, ¶¶ 5-18 (describing the basic structure of the alleged scheme).
[7] R. Doc. No. 1, ¶ 19; R. Doc. No. 1-12.

or immediately upon demand of the Plaintiffs, whichever was the first to occur."[8] "Catron advised the Defendants that the $200,000 investment would come from the proceeds of a loan that the Plaintiff[s] would need to obtain."[9]

"Catron then inquired, through a friend, Joseph P. Taylor ["Taylor"] who resided in Covington, Louisiana, as to whether he knew of an individual that might be interested in making a personal loan to the Plaintiffs."[10] Through Taylor, Catron met "Mike Moore ["Moore"], a businessman from Slidell, Louisiana,"[11] who agreed to loan $200,000 to plaintiffs without any written instrument.[12] Moore wired the money to Pinnacle's checking account, and plaintiffs immediately transferred those funds to an account designated by defendants.[13]

In the months that followed, Catron was in communication with defendants and with Moore "often multiple times per day."[14] The complaint does not allege that defendants ever had any direct contact with Moore or Taylor, but Catron did relay to them all the information that he received from defendants.[15] Although the "managed buy/sell" system was supposed to begin within three or four weeks after the transfer of the $200,000,[16] no "buy/sell" transactions ever took place.[17] Plaintiffs demanded from defendants the return of their funds on December 17, 2008,[18] and Moore demanded from plaintiffs the return "of his $200,000 together with interest"

---

[8] R. Doc. No. 1, ¶ 15.
[9] R. Doc. No. 1, ¶ 21.
[10] R. Doc. No. 1, ¶ 22.
[11] R. Doc. No. 1, ¶ 23.
[12] R. Doc. No. 1, ¶ 24.
[13] R. Doc. No. 1, ¶ 26.
[14] *See, e.g.*, R. Doc. No. 1, ¶¶ 30-31.
[15] *See, e.g.*, R. Doc. No. 1, ¶ 45.
[16] R. Doc. No. 1, ¶ 32.
[17] *See, e.g.*, R. Doc. No. 1, ¶¶ 54-58.
[18] R. Doc. No. 1, ¶ 49.

on May 20, 2009.[19] In or around June 2009, defendants informed plaintiffs that they were unable to recover the $200,000.[20]

Plaintiffs filed a complaint in the above-captioned matter on January 7, 2014.[21] Plaintiffs allege that this Court has diversity jurisdiction and that "[v]enue is proper in the jurisdiction because some of the elements of the transaction and damages sustained occurred within this district."[22] Defendants filed their motion to dismiss on February 18, 2014, seeking a dismissal due to lack of personal jurisdiction[23] and a number of other grounds.[24]

## LAW AND ANALYSIS

The Court considers the jurisdictional attack pursuant to Rule 12(b)(2) before addressing defendants' alternative grounds for dismissal. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When a foreign defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). Where, as here, the Court rules without conducting an evidentiary hearing, the plaintiff bears the burden of establishing a prima facie case that the Court has jurisdiction over a defendant. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).[25] If the defendant disputes the factual bases for jurisdiction, "the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the

---

[19] R. Doc. No. 1, ¶ 53.
[20] R. Doc. No. 1, ¶ 54.
[21] R. Doc. No. 1.
[22] R. Doc. No. 1, ¶ 4.
[23] R. Doc. No. 4, at 2-3.
[24] R. Doc. No. 4, at 3-5.
[25] While the plaintiff must ultimately demonstrate that jurisdiction is proper by a preponderance of the evidence, courts are permitted to defer the resolution of that question until trial to allow it to be resolved along with the merits. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (internal quotation marks omitted) (citations omitted). The Court should not, however, act as a fact finder and it must construe all disputed facts in the plaintiff's favor. *Id.*

A federal court may only exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Because the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits, the Court need only consider the second step of the inquiry. *Walk Haydel*, 517 F.3d at 242-43 (citing *A&L Energy, Inc. v. Pegasus Grp.*, 791 So. 2d 1266, 1270 (La. 2001)).

"[T]he Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted).

"The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung*, 379 F.3d at 343. "Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citation omitted) (internal quotation marks omitted). "Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (citation and quotation marks omitted).

Plaintiffs do not allege that any defendant is subject to general personal jurisdiction, but they do argue that specific personal jurisdiction is present.[26] The U.S. Court of Appeals for the Fifth Circuit has articulated the following three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[27]

---

[26] R. Doc. No. 5, at 3.
[27] As stated in *Nuovo Pignone*:
> Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. The defendant must make a "compelling case." In determining whether the exercise of jurisdiction is fair and reasonable, we look to (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies.

310 F.3d at 382 (citations omitted).

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King*, 471 U.S. at 474); *see also McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); *see also Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 580-82 (E.D. La. 2013).

Defendants note that the complaint does not allege that they, themselves, had any contacts with Louisiana.[28] The only alleged connection to plaintiffs' chosen forum relates to the loan that plaintiffs obtained from Moore.[29] Generally speaking, this "unilateral activity" by plaintiffs would not be considered in determining whether there was personal jurisdiction over defendants. *Burger King*, 471 U.S. at 475 (citations omitted). However, plaintiffs correctly assert[30] that their actions can be imputed to defendants: "Ordinarily, whenever one co-venturer acts in the forum to further the interests of the venture, its contacts with the forum will be attributed to the co-venturers." *Nolan v. Boeing Co.*, 736 F. Supp. 120, 127 (E.D. La. 1990) (Feldman, J.); *see also Stiaes v. GEORXT, Inc.*, No. 12-3013, 2013 WL 3107464, at *3 (E.D. La. June 18, 2013) (Vance, C.J.); *Adm'rs of the Tulane Educ. Fund v. Debio Holding S.A.*, No. 99-2207, 2000 WL 877015, at *3 (E.D. La. June 29, 2000) (Roby, M.J.). Construing the complaint and its incorporated exhibits in plaintiffs' favor, the Court finds for purposes of this motion that a joint venture existed between plaintiffs and defendants.[31] *See Walk Haydel*, 517 F.3d at 241.

---

[28] R. Doc. No. 4, at 2.
[29] *See* R. Doc. No. 1, ¶¶ 23-26; R. Doc. No. 5, at 4.
[30] R. Doc. No. 5, at 5.
[31] The Court notes that the joint venture agreement states, "Both Parties are only acting as joint venture partners of each other, in a principal capacity, and not in any other capacity whatsoever." R. Doc. No. 1-12, at 2. Neither party ascribes any significance to this clause.

Accordingly, the Court must also consider plaintiffs' contacts with Louisiana when determining whether personal jurisdiction exists over defendants.

Plaintiffs' relevant contacts are: (1) soliciting the loan from Moore, a Louisiana resident, through an introduction by Taylor, a Louisiana resident;[32] (2) entering into an agreement with Moore;[33] (3) receiving a $200,000.00 wire transfer from Moore's account in Louisiana;[34] and (4) communicating with Moore regarding the status of the investment scheme.[35] However, even assuming that these contacts are sufficient "minimum contacts" under the first prong of the *Nuovo Pignone* test, the Court finds that it lacks personal jurisdiction over defendants because plaintiffs have not satisfied the second prong of the *Nuovo Pignone* test.

According to plaintiffs, "[t]he fact that [defendants] knew the money was coming from a Louisiana resident should have put them on notice that they could be hailed into court in this state."[36] Plaintiffs assert that "[t]he causes of action listed in the complaint clearly arise and are based on the loss of the $200,000.00 from a Louisiana resident."[37] However, this assertion mischaracterizes the allegations of the complaint. The $200,000.00 loan from Moore was a collateral transaction that plaintiffs undertook in order to meet their obligations under the joint venture agreement. Although plaintiffs kept Moore informed of the status of the investment,[38] Moore was not a party to the joint venture agreement[39] and he contracted only with plaintiffs.[40]

---

[32] R. Doc. No. 1, ¶¶ 23-24.
[33] R. Doc. No. 1, ¶¶ 24-26.
[34] R. Doc. No. 1, ¶ 26.
[35] *See, e.g.*, R. Doc. No. 1, ¶¶ 32, 45, 52. The Court notes that plaintiffs do not identify any specific contacts which they contend support personal jurisdiction. Instead, plaintiffs merely assert that "any of plaintiff[s'] actions in Louisiana . . . can be imputed to the defendants." R. Doc. No. 5, at 5.
[36] R. Doc. No. 5, at 4.
[37] R. Doc. No. 5, at 4.
[38] *See, e.g.*, R. Doc. No. 1, ¶¶ 32, 45, 52.
[39] R. Doc. No. 1-12.

The true basis of the complaint is the investment scheme between plaintiffs and defendants and defendants' alleged misrepresentations and fraud in connection with that scheme.[41] Accordingly, plaintiffs' assertion that their claims "clearly arise and are based on the loss of the $200,000.00 from a Louisiana resident" is without merit.[42]

Because plaintiffs' causes of action cannot be considered to "arise out of" or "result[] from" any contacts with Louisiana, the Court does not have personal jurisdiction over defendants. *See Nuovo Pignone*, 310 F.3d at 378; *Wien Air Ala., Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this *alone* constitutes purposeful availment.") (emphasis added); *see also Fire Eagle, LLC v. Bischoff*, No. 08-1564, 2009 WL 799964, at *5 (E.D. La. Mar. 25, 2009) (Engelhardt, J.) (finding that specific personal jurisdiction did not exist where the only contacts with the forum state related to a collateral transaction because "contracts signed contemporaneously between *different parties*, even if they deal with the same broad subject matter, should [not] be construed as one contract"). As plaintiffs have not satisfied the second prong of the *Nuovo Pignone* test, this Court need not consider the third prong of the *Nuovo Pignone* test.

Plaintiffs cite *Spyglass Capital Partners, L.P. v. Kim*, No. 07-3478, 2008 WL 8082753 (S.D. Tex. Mar. 12, 2008) (Ellison, J.), for the proposition that, "[i]n cases involving the intentional tort of fraud, '[a] single act by a defendant can be enough to confer personal jurisdiction *if* that act gives rise to the claim being asserted.'"[43] *Id.* at *2 (emphasis added). Although plaintiffs correctly quote *Spyglass*, the complaint does not allege that any fraudulent

---

[40] R. Doc. No. 1, ¶¶ 23-26.
[41] *See, e.g.*, R. Doc. No. 1, ¶¶ 59-91.
[42] R. Doc. No. 5, at 4.
[43] R. Doc. No. 5, at 4.

8

acts occurred in Louisiana or were directed towards any Louisiana resident. Defendants' alleged fraud was directed at plaintiffs, not at Moore, who is not a party to the lawsuit, and the complaint does not identify any fraudulent act that occurred in Louisiana or that was directed toward a Louisiana resident. Accordingly, *Spyglass* does not affect the Court's conclusion.

## CONCLUSION

The mere fact that plaintiffs entered into a collateral agreement with a Louisiana resident does not support a finding that this Court has personal jurisdiction over defendants as to plaintiffs' claims relative to the investment scheme. Because the Court does not have personal jurisdiction over defendants, it need not address the rest of defendants' motion. Accordingly,

**IT IS ORDERED** that defendants' motion to dismiss is **GRANTED** to the extent that it seeks a dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2).

**IT IS FURTHER ORDERED** that the motion is **DISMISSED AS MOOT** in all other respects.

**IT IS FURTHER ORDERED** that all of plaintiffs' claims in the above-captioned matter are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, May 6, 2014.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE